FILED

FEB - 2 2021

MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL R.,                                             19-CV-6836-MJR
                                                        DECISION AND ORDER
                        Plaintiff,

        -v-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

        Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States

Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 16)

        Plaintiff Michael R.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "defendant") denying his application for Supplemental

Security Income ("SSI") under the Social Security Act (the "Act").  Both parties have

moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure.  For the following reasons, plaintiff's motion (Dkt. No. 12) is denied and

defendant's motion (Dkt. No. 14) is granted.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name
and last initial.

## BACKGROUND[2]

On March 20, 2017, plaintiff applied for SSI alleging disability beginning August 1, 2016, due to shoulder injury, seizures, and anxiety.  (Tr. 154, 167)[3]  Plaintiff's claim was denied at the initial level, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ") on November 5, 2018.[4]  (Tr. 12-33, 34-48, 63-72)  The Appeals Council denied further review of the ALJ's decision on September 13, 2019.  (Tr. 1-6)  This action followed.  (Dkt. No. 1)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case.  (Dkt. No. 7)

[4] Plaintiff did not attend the administrative hearing.  The ALJ sent a Notice to Show Cause on November 5, 2018, to which he did not respond.  Accordingly, plaintiff waived his right to offer a personal appearance at the hearing.  The ALJ found the record to be sufficient for a full and fair determination and her decision was based on the current record.  (Tr. 15)

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

3

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."   20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first,

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.     *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the relevant period. (Tr. 17) At step two, the ALJ found that plaintiff had the severe impairments right rotator cuff tear, obesity, history of alcohol abuse, anxiety disorder, and major depressive disorder. Additionally, the ALJ found the nonsevere impairments of gastroesophageal reflux disease, wrist laceration, right knee pain, left arm pain, brain injury, and headaches. (Tr. 17-18) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. 18-19) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform:

> light work as defined in 20 CFR 416.967(b). The claimant could lift/carry twenty pounds occasionally and ten pounds frequently; sit six of eight hours; and can stand/walk six of eight hours. He could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant could occasionally reach overhead with the dominant right upper extremity and could frequently reach in other directions and push/pull with the dominant right upper extremity. He should not climb ladders or scaffolds, work at unprotected heights, or work with dangerous moving machinery. Secondary to mental impairments, the claimant could understand, remember, and carry out instructions for routine repetitive type unskilled work. He could sustain attention and concentration for two-hour segments of time in an eight-hour day. The claimant could occasionally interact with the public on a brief and superficial basis; he could interact with coworkers and supervisors for work-related and task-oriented interactions. The claimant could adapt to changes in work setting for routine, repetitive type, unskilled work. He should avoid fast pace or high production goal work.

(Tr. 19-20)  Proceeding to step four, the ALJ found that plaintiff had no past relevant work. (Tr. 27)  At step five, relying on the testimony from a Vocational Expert ("VE"), the ALJ determined that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform, such as marker, cafeteria attendant, housekeeper/cleaner, and sales attendant.  (Tr. 27-28)  Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act.  (Tr. 29)

IV.    *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision on the following grounds: (1) The ALJ erred at step two in the severity analysis; (2) the RFC finding was unsupported by substantial evidence; (3) the ALJ's consistency finding was unsupported by substantial evidence;  and (4) the VE's testimony was unreliable and inconsistent with the Dictionary of Occupational Titles.  (Dkt. No. 12-1 at 1, 12-30)

A.    **Step Two Analysis**

Plaintiff contends the ALJ erred at step two of the sequential evaluation process by finding that his alleged seizure disorder and traumatic brain injury ("TBI") were not severe medically determinable impairments.  (Dkt. No. 12-1 at 12-21)  Specifically, he claims that the record establishes his TBI with related sequelae of seizures and headaches are severe impairments and that the ALJ failed to conduct a complete evaluation of the evidence related to his seizures and TBI. (*Id.* at 13-14)

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 416.922(a).  Basic work activities include functions such as walking, standing, sitting, lifting, reaching, carrying, handling, hearing, seeing, speaking, and mental functions

including understanding, carrying out, and remembering simple instructions.  *See* 20 C.F.R. § 416.922(b).  "The claimant bears the burden of presenting evidence establishing severity." *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 276 (W.D.N.Y. 2018) (quoting *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)); *see also Woodmancy v. Colvin*, 577 Fed. Appx. 72, 74 (2d Cir. 2014) (quoting 20 C.F.R. § 416.920(c)).  "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment, is not, by itself, sufficient to render a condition severe." *Ryan v. Colvin*, No. 15-CV-74S, 2017 WL 2240256, at *3 (W.D.N.Y. May 23, 2017) (quoting *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 300 (S.D.N.Y. 2014)); *see also Prince v. Astrue*, 514 Fed. Appx. 18, 20 (2d Cir. 2013).

Contrary to plaintiff's assertion, the ALJ conducted a thorough inquiry as to the severity of his impairments.  The ALJ observed that plaintiff had a history of TBI due to an ATV accident in 2011. (Tr. 17)  Plaintiff reported residual effects such as seizures and headaches, but the record did not reflect ongoing treatment for TBI. (*Id.*)  In September, 2011, plaintiff was noted as doing well except for some visual disturbance. (*Id.*)  In 2013, plaintiff sought emergency room care for pre-syncope, however, upon neurology follow-up, his examination was normal and he was assessed with altered mental status.  (Tr. 17-18)  Plaintiff's description of "seizures" appeared to be consistent with psychogenic non-epileptiform attacks with a possible contributing component of polypharmacy, and therefore psychiatric in nature. (Tr. 18)  During that visit, the neurologist recommended an EEG to officially rule out a seizure disorder, and recommended that plaintiff see psychiatry to manage his condition.  (*Id.*)  There is no evidence the EEG was ever performed.

In October of 2017, plaintiff reported chronic headache, but his neurological examination was normal. His headaches subsided after one to two hours with cool compresses and sleep, and no medications were prescribed. (Tr. 18)

From 2016 to 2017, plaintiff underwent primary care treatment at FLH Medical in Geneva, New York. (Tr. 509-544) The ALJ observed that in August, 2017, plaintiff reported to his nurse practitioner ("NP") that he had two seizures per week lasting ten minutes with postictal and severe headache afterward. (Tr. 22) Assessments included, *inter alia*, epilepsy, continued sequelae of TBI, and chronic headache. Plaintiff was referred to a neurologist. (*Id.*) On follow-up two months later, plaintiff's spouse reported three major seizures since August. Plaintiff was again referred to neurology, however he did not attend his neurology appointments in February and May of 2018. (*Id.*)

In June, 2018, plaintiff sought primary care at University of Rochester Medical Center, where he reported multiple seizures throughout the week, sometimes daily. (Tr. 22) Upon examination plaintiff was in no acute distress and did not exhibit any involuntary movements of tremors. He was prescribed Depakote for seizures and was again referred to a neurologist. (*Id.*) The ALJ also noted that plaintiff did not undergo any inpatient or hospitalization for his seizures. (Tr. 23)

The ALJ was correct in that the record fails to document any actual ongoing treatment for plaintiff's TBI/seizures. In general, failure to seek treatment for a given condition "seriously undermines" any claim of inability to perform work-related activities due to this condition. *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989); *see also Navan v. Astrue,* 303 Fed. Appx. 18, 20 (2d Cir. 2008). As noted by the ALJ, the evidence shows that on a few occasions during the relevant period, either plaintiff or his spouse reported

9

that plaintiff was having multiple "grand mal" seizures per month, or even week, but other than these subjective reports, there is no evidence of any ongoing evaluation or treatment for a seizure disorder.  (Tr. 22-23, 287, 374, 531, 537)  The ALJ considered these self-reports and referrals to a neurologist, but also noted that plaintiff failed to attend two scheduled appointments with a neurologist for evaluation and treatment.  (Tr. 22, 327, 333)  Likewise, while plaintiff reported a seizure disorder to a new primary care provider in June of 2018, and was again referred to neurology, there is no evidence plaintiff followed through on this referral.  (Tr. 373-76)  The record also fails to reveal any emergency room visits, diagnostic studies, or objective evidence of treatment for TBI/seizures during nearly the entire period at issue.   The record contains only self-reports of seizures during the relevant period.  "[A] claimant's subjective report of her symptoms is not controlling but must be supported by medical evidence."   *Vilardi v. Astrue*, 447 Fed. Appx. 272 (2d Cir. 2012).

Despite the lack of objective evidence to support plaintiff's allegations regarding his TBI/seizures and the ALJ's finding that TBI and seizures were not severe impairments, the ALJ appropriately considered whether plaintiff's nonsevere impairments caused any work-related limitations when making the RFC finding. (Tr. 18, 26-27)  Specifically, the ALJ stated that "[d]ue to a combination of his severe and nonsevere impairments, including history of reported seizures," the evidence supported limitations regarding restricting Plaintiff from climbing ladders, ropes, or scaffolds, working at unprotected heights or with dangerous moving machinery, as well as fast-paced or high-production goal work. (Tr. 26-27)  Where an ALJ proceeds past step two and considers the effects of all of claimant's impairments through the remainder of the sequential evaluation

process, any error at step two is harmless. *Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. May 2, 2013); *Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n.1 (2d Cir. Mar. 24, 2010) (errors at step two are harmless as long as the ALJ continues with the sequential analysis).

Plaintiff also argues that because the ALJ should have found his TBI/seizure disorder to be severe, the ALJ should have then also considered this impairment under Listing 11.02 at step three.  (Dkt. No. 12-1 at 18)  Listing 11.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1 is used to evaluate individuals undergoing treatment for epilepsy. As previously noted by the ALJ, the evidence does not establish epilepsy as a severe medically determinable impairment for which plaintiff was undergoing treatment. Moreover, the regulations specifically state that "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02" and should be evaluated "under the mental disorders body systems, 12.00." *See* Section 11.00H.1. of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ noted that evaluation by a neurologist in 2013 failed to diagnose a seizure disorder, but indicated plaintiff was likely experiencing psychogenic non-epileptiform attacks. (Tr. 17-18, 294) Plaintiff's contention is therefore without merit.

### B.    RFC Finding

Plaintiff next argues that the ALJ failed to explain how the evidence supported the specific abilities and limitations reflected in the RFC finding.  (Dkt. No. 12-1 at 21-27)

The RFC is an assessment of "the most [plaintiff] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).  The ALJ is responsible for assessing plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any

statement about what plaintiff can still do, provided by any medical sources. *Id.* §§ 416.927(d), 416.945(a)(3), 416.946(c).

In formulating the RFC, the ALJ thoroughly considered plaintiff's allegations and symptoms, treatment history, medications, objective examination findings, and the medical opinion evidence. (Tr. 19-27)

With regard to the upper right extremity, substantial evidence supports the RFC finding that plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and perform any reaching with the arm. The ALJ considered evidence showing plaintiff had a rotator cuff tear and impingement in his right shoulder that caused some restricted range of motion, reduced strength, and pain in the shoulder. (Tr. 21-27, 258, 276-77, 288-90, 375-76, 532, 538)  However, the ALJ also pointed out inconsistencies in the medical and nonmedical evidence that indicated plaintiff's alleged shoulder impairment was not disabling. (Tr. 22-23)  For example, although plaintiff had limited range of motion and strength in the shoulder, normal range of motion was also documented in the shoulder, he had no signs of muscle atrophy to indicate a lack of physical activity, his grip strength was normal, and hand and finger dexterity were intact, and physical examinations were otherwise unremarkable. (Tr. 288-90, 300, 375-76, 532, 538)

The ALJ also addressed opinion evidence related to plaintiff's upper extremity when considering his limitations, giving "some weight" to the consultative examiner's opinion that plaintiff had "marked limitations" reaching, pushing, and pulling. (Tr. 26, 290) The ALJ noted and discussed the inconsistencies among physical examinations over the period at issue, records indicating a subsequent decrease in prescribed medications to

treat plaintiff's pain,[5] and evidence that plaintiff was involved in multiple activities that were inconsistent with a finding of disability, such as personal care tasks, driving go-karts, mowing the lawn, and competing in a demolition derby in July of 2018. (Tr. 26, 187-88, 190, 273, 282, 362, 366, 374)

The ALJ also considered and rejected an opinion from plaintiff's treating nurse practitioner that he was very limited in his ability to lift/carry, push/pull, bend, use his hands, and climb stairs. Giving the opinion "little weight," the ALJ reasoned that the NP's statements were inconsistent with the overall record, specifically the consultative examination, which revealed normal grip strength, intact hand and finger dexterity, ability to climb stairs, and fully squat. (Tr. 26) Here, the ALJ was entitled to discount the NP's restrictive opinion where it is contradicted by the findings and conclusions of other medical sources, plaintiff's conservative treatment, and his activities of daily living. *See Abarzua v. Berryhill*, 754 Fed. Appx. 70 (2d Cir. 2019) (summary order). Moreover, it was within the ALJ's discretion to base functional limitations in the RFC on her review of the medical record as a whole. *See Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. Jan. 25, 2013) (ALJ may base residual functional capacity on "record as a whole;" residual functional capacity need not "perfectly correspond" with medical opinion).

With respect to plaintiff's mental limitations, plaintiff asserts that the ALJ engaged in "circular" reasoning for assigning little weight to the NP's opinion, which indicated that his mental impairments (anxiety and depression) caused moderate limitations in all categories of mental functioning. (Dkt. No. 12-1 at 26-27; *see* Tr. 26, 547-48)

---

[5] Notably, plaintiff's orthopedist recommended anti-inflammatories for pain rather than narcotic medications, despite plaintiff's request. (Tr. 25, 26, 277)

"Because an ALJ 'should use medical opinions to determine' the RFC, the ALJ 'cannot give medical opinions weight based on their consistency with the RFC,' as such 'reasoning is circular and flawed.'" *Simmons v. Colvin*, No. 15-CV-0377, 2016 WL 1255725, at *15 (E.D.N.Y. Mar. 28, 2016) (quoting *Faherty v. Astrue*, No. 11-CV-02476, 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013)).

The ALJ discussed the evidence related to plaintiff's mental impairments. (Tr. 23-25) Following this discussion, she evaluated the opinion evidence from plaintiff's NP, and concluded that "the record supports some moderate limitations in mental functioning, though no more than those contained in the residual functional capacity." (Tr. 26) However, it is clear from the ALJ's decision that the NP's opinion afforded diminished weight because was inconsistent with the overall record. As noted by the ALJ in the rationale for plaintiff's mental RFC findings (*see* Tr. 19-27), the record revealed he received limited treatment from his primary care providers and did not experience any inpatient hospital stays during the relevant period or even engage in outpatient therapy. (Tr. 279) Mental examinations revealed he was alert and fully oriented, with fairly good memory skills, normal judgment, an appropriate or sometimes anxious affect, and coherent and goal-directed thought processes. (Tr. 273, 281-82, 375-76, 531-32, 538) He received medication from his primary care provider only and indicated it helped his symptoms. (Tr. 273) Plaintiff stated that he experienced symptoms of depression or anxiety only once or twice per week, and he rated the symptoms as "mild." (Tr. 279-80)

The ALJ also considered evidence indicating plaintiff was able to perform his own personal care, race go-karts, drive in a demolition derby, help raise his children, shop in stores, and attend his children's sporting events three of four times per week. (Tr. 187-

88, 190, 273, 282, 362, 366, 374)  Such mild findings and very limited treatment over the relevant period provide ample support for the ALJ's mental RFC finding limiting plaintiff to understanding, remember, and carrying out instructions for routine, repetitive-type unskilled work; the ability to maintain concentration and attention for two hours at one time; occasionally interact on a superficial basis with the public; the ability to adapt to changes in routine, repetitive-type work; and avoid production or fast-paced work.  (Tr. 20)  *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5 (2d Cir. 2017) (finding that substantial evidence, including normal mental status findings and activities, supported the ALJ's RFC for unskilled work despite a lack of supportive functional assessment from a medical source).

While the ALJ may not have explained how every piece of evidence was weighed against the NP's statements, the ALJ's rationale is apparent.  Where the evidence in the record permits the court "to glean the rationale of an ALJ's decision," the ALJ need not mention every item of testimony presented or even explain why particular evidence was considered unpersuasive or insufficient to support a conclusion of disability.  *Miller v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 384, 388 (2d Cir. Dec. 2, 2010) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Plaintiff also further that despite assigning "some weight" to the opinion from the agency psychological consultant, the ALJ did not make clear why only some of the assessed limitations were adopted and others were excluded.  (Dkt. No. 12-1 at 26-27)  The Court does not agree.

After reviewing plaintiff's allegations and discussing evidence in the file as of the date of review (May 31, 2017), the agency consultant found that plaintiff had moderate

limitations in attention and concentration; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to accept instructions and respond appropriately to criticism from supervisors.  (Tr. 56-59)  Overall, the evidence indicated plaintiff had "the ability to perform the basic mental demands of unskilled work." (Tr. 59)  The ALJ afforded this opinion "some weight" on the basis that plaintiff received mental health medications from his primary physician and he reported mild mental symptoms and improvement with medications.  (Tr. 25)  The ALJ stated that the RFC was not inconsistent with this opinion, and that the opinion was "claimant favorable."  (Tr. 25)

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, at *4, 1985 WL 56857.  The ALJ's RFC finding, which limited plaintiff to routine, repetitive, unskilled work, and included restrictions related to working with the public, as well as fast-paced and production work, was consistent with the consultant's opinion that plaintiff could meet the basic mental demands of unskilled work.  (Tr. 19-20)    Further, the ALJ clearly considered evidence relating to plaintiff's ability to maintain concentration, persistence, or pace, noting that his statements about his ability to complete tasks and pay attention were inconsistent, but the consultative examination documented some problems in this domain.  (Tr. 19, 281)    The formulated RFC therefore addresses and accounts for plaintiff's mental limitations.  *See Eby v. Colvin*, 227 F. Supp. 3d 275, 279-80 (W.D.N.Y. 2017) ("The RFC determined by the ALJ, which limits plaintiff to performing low-stress,

goal-oriented work (and not production pace work), involving only simple tasks, adequately accounts for plaintiff's moderate limitations in attention and concentration.").

### C.     Consistency Finding

Plaintiff contends the ALJ's consistency finding is not supported by substantial evidence because the ALJ mischaracterized and cherry-picked the evidence related to plaintiff's subjective complaints and did not adequately consider the consistency of his statements and allegations.  (Dkt. No. 12-1 at 27)

This point warrants little discussion, as plaintiff fails to identify any specific language from the ALJ's decision that constitutes a mischaracterization or cherry-picking of the evidence.  Here, the ALJ complied with the requirements set forth for evaluating the intensity and persistence of plaintiff's symptoms by documenting consideration of objective medical evidence as well as other evidence.  (Tr. 19-27)  *See* 20 C.F.R. § 416.929.  As previously discussed, the ALJ evaluated objective evidence from multiple providers, which consistently revealed no more than mild-to-moderate findings, evaluated plaintiff's subjective complaints, and discussed the inconsistency of plaintiff's allegations with evidence of his work history, activities of daily living, ability to interact with others, medications, and conservative treatment history.  (Tr. 18-27)  *See* 20 C.F.R. § 416.929; Social Security Ruling ("SSR") 16-3p.  The Court finds no error with respect to the consistency finding.

### D.     VE Testimony

Plaintiff argues that the ALJ's step five finding that he could perform "other" work was not supported by the record because the VE's testimony was unreliable and inconsistent with the Dictionary of Occupational Titles ("DOT").  (Dkt. No. 12-1 at 28)

Specifically, plaintiff challenges the ALJ's finding that plaintiff "could occasionally reach overhead with the right upper extremity" as inconsistent with DOT requirements. (*Id.*; *see* Tr. 19)

"According to SSR 00-4p, ALJs must '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts or vocational specialists] and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations[.]'" *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) (quoting SSR 00-4p).

Here, the ALJ posed a hypothetical question to the VE that mirrored the RFC finding and plaintiff's vocational background. (Tr. 41-43) The VE testified that such an individual could perform the jobs of marker (DOT #209.587-034, with 290,000 jobs in the national economy), cafeteria attendant (DOT #311.677-010, with 59,000 jobs in the national economy), housekeeping/cleaner (DOT #323.687-014, with 135,000 jobs in the national economy), and sales attendant (DOT #299.677-010, with 216,000 jobs in the national economy). (Tr. 42-43)

The VE then testified that the DOT did not address all of the limitations presented in the ALJ's hypothetical, so that portion of his testimony was based on his education, training, and work experience over the past 40 years. (Tr. 44) In response, the ALJ inquired further of the VE regarding potential inconsistencies with the DOT, explicitly asking the VE about whether the DOT addressed the unilateral reaching and manipulative limitations presented in the hypothetical, to specifically include occasional overhead reaching with the right dominant upper extremity. (Tr. 44-45) The VE confirmed that the

unilateral reaching limitations, including overhead reaching as well as his testimony related to attendance and time off task, were not addressed by the DOT, so that portion of his testimony was based on his education, training, and work experience.  (Tr. 44-45, 47)

By engaging in this inquiry, the ALJ made a "meaningful investigatory effort" to ascertain whether there was a conflict and obtained a reasonable explanation from the VE.  *See Lockwood*, 914 F.3d at 91.  In any event, "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict." SSR 00–4p.  "The DOT may be used for taking administrative notice of reliable job information. . . . However, the DOT is not the sole source of admissible occupational evidence nor is it entirely comprehensive." *Ramos v. Astrue*, No. 09CV0090, 2010 WL 2854450, at *5 (W.D.N.Y. July 19, 2010) (internal citations and quotations omitted).    "The ALJ is not required to rely on classifications in the DOT and may instead rely on a VE's testimony, even if it is inconsistent." *Id.* (citation omitted); *accord Reynolds v. Comm'r of Soc. Sec.*, No. 11-CV-00778, 2012 WL 2050410, at *6 (N.D.N.Y. June 6, 2012).  In the written decision, the ALJ specifically addressed the VE testimony: "[p]ursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the [DOT].  The additional information regarding occasional overhead reach with the right dominant upper extremity, was based on the [VE's] professional experience."  (Tr. 28) The Court therefore finds no merit to plaintiff's argument that the ALJ failed to identify the inconsistency and likewise failed to resolve the conflict. (*See* Dkt. No. 15 at 9)

The Court concludes that the Commissioner met his burden at step five of the sequential evaluation process showing that work exists in significant numbers in the

national economy that plaintiff could perform.  *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Accordingly, the ALJ's decision is supported by substantial evidence and free of legal error.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:        February 1, 2021
              Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge